MARY E. DALY, Respondent, v. EDWARD B. PRYOR,
Receiver of The WABASH RAILROAD COM-
PANY, Appellant.

**Kansas City Court of Appeals, November 5, 1917.**

1. **NEGLIGENCE: Wrongful Death: Dead Body of Passenger Found
Between Railroad Tracks: Presumption.** The dead body of a man
who was a passenger on one of defendant's northbound passenger
trains was found between the railroad tracks about one-half mile
south of a station. No one saw the accident. There was evidence
tending to prove that deceased fell from the rear platform of the
moving train. It was *held* that the trial court did not err in refus-
ing to sustain a demurrer to the evidence as all the facts and cir-
cumstances shown were sufficient to warrant the submission of
the case to the jury.

2. ———: **Instructions.** Instructions which told the jury that it was
the duty of a railroad company to keep the rear door of the car,
as well as the vestibule doors and the gate at the rear end of the
car, shut or "securely fastened" and that the railroad company was
guilty of negligence if either the rear door of the car or the rear
gate was not fastened or locked, were erroneous. A railroad dis-
charges its full duty if it keeps either securely fastened and is not
required to keep the doors of vestibule cars locked.

3. ———: **Evidence: Res Gestae.** Where the record fails to disclose
what period of time elapsed between the time of the accident and
the time of an alleged conversation between the conductor of the
train and the companion of one who had disappeared from a
train and the time when the accident occurred, it was not error
for the trial court to refuse an offer to prove such conversation
and especially is this ruling not erroneous where it is apparent
that a great deal of time had elapsed.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,
Judge.*

REVERSED AND REMANDED.

*J. L. Minnis, N. S. Brown* and *Higbee & Mills* for
appellant.

*Campbell & Ellison* and *Weatherby & Frank* for re-
spondent.

BLAND, J.—Plaintiff, the wife of James Daly, deceased, brought this action alleging that defendant negligently caused his death. The jury found for plaintiff in the sum of three thousand ($3,000) dollars.

The facts show that during the month of August, 1913, James Daly, accompanied by his daughter-in-law, was a passenger on one of defendant's trains from Kansas City, Missouri, to Ottumwa, Iowa. Daly and his companion changed trains at Moberly, Missouri, about 1:30 A. M. of the night of August 4, 1913. That part of the train upon which the deceased traveled north from Moberly consisted of two sleepers and a chair car. These three cars were all vestibule cars. Deceased and his companion were seated in the chair car, which was in front of the two sleepers.

Shortly after the train left the station at Kirksville, Missouri, deceased was missed by his daughter-in-law (who died before the trial) and the conductor made a search for him and could not find him. In the early morning of the same day deceased's body was discovered lying between defendant's tracks about one-half a mile south of the station at Kirksville. The train was north bound. The evidence shows that there was a good size pool of blood at the place where deceased's head lay when he was found. An examination of the track revealed that at a point about twenty-five (25) feet south of his body two heel prints were noticed upon a tie between the rails, almost at the center of the track. A short distance north of the heel prints was a mark in the cinders and gravel showing where the cinders had been scraped up; a few feet north of this was another mark of the same kind, and some farther north was another similar mark, the body lying five or six feet north of the last named mark in the cinders. Deceased's hat was found still farther north on the track. The hat contained a check showing he was en route to Ottumwa, Iowa. There was no evidence of any marks in the cinders south of these heel prints. Several matches were found on the track, scattered along between the rails from the heel marks on the tie to where

deceased lay, of the same description as those found in deceased's vest pocket. An examination of the body showed that the right side of the face contained particles of cinders; that the back of the coat was torn and that blood was running from the nose and ears of the deceased; that there was a number of bruises on the back and a severe bruise over the right ear; that the heel of one shoe was partly torn loose and a cinder lodged in the shoe where broken. The train was proceeding at the rate of about forty miles per hour when it passed the spot where deceased's body was found.

It is plaintiff's theory that the deceased feel from the rear sleeper; that knowing the train was a vestibule train he walked to the rear for some purpose not known and on stepping on the rear platform found the gate at the rear car open and fell through that gate and met his death.

The defendant introduced evidence tending to show that the rear gate was up and securely fastened at the time the train passed the point where deceased's body was found. This was sworn to by the conductor and brakeman. Defendant also introduced testimony tending to show that the deceased just as the train was slowing up for Kirksville was seen walking toward the door of the car in which he was seated, along with some other persons who intended to get off at Kirksville. Defendant further showed that during the same night two persons were murdered a short distance from where deceased's body was found. Defendant's theory of the case is that deceased left the train at Kirksville and walked back a half a mile down the track and was waylaid and killed. There was no evidence of robbery.

The specific negligence charged in the petition is that defendant negligently failed at all times between stations and while said train was in motion to keep the openings in said train securely closed and fastened to prevent passengers thereon from falling through or out of said openings.

The first point made by the defendant is that a demurrer to the evidence should have been sustained. De-

fendant urges that the verdict of the jury in favor of plaintiff is based upon conjecture as to how deceased met his death.

From the evidence detailed above we believe that plaintiff made out a strong case of circumstantial evidence that deceased met his death through leaving the rear end of the train, and consequently there was sufficient evidence of probative force from which the jury could have found such fact. While it was the duty of plaintiff to establish this fact and make out a prima-facie case and not the duty of the defendant to advance a more plausible theory as to how the deceased met his death, the evidence fails to disclose any reasonable theory other than that the deceased fell from the rear of the train. The only explanation suggested by the defendant as to how plaintiff might have come to his death does not strongly appeal to reason. The deceased had no occasion to leave the train at Kirksville. His destination was Ottumwa, Iowa. The physical signs found upon the body of the deceased and upon the tracks of the defendant, together with the speed of the train, point strongly to the fact that deceased left the rear end of the train. This whole matter was one for the jury.

But the defendant urges that if deceased left the rear end of the train, it must have been through his contributory negligence. This suggestion is not well taken for the reason that as no one saw the deceased when he was leaving the train, the presumption is that when he went to the rear end of the same he was in the exercise of ordinary care, which includes the presumption that he did not commit suicide. [Hatchett v. Railways, 175 S. W. 878; Johnston v. Railroad, 150 Mo. App. 304].

It is true that the presumption of absence of contributory negligence cannot take the place of proof of defendant's primary negligence (Yarnell v. Railroad, 113 Mo. 570), and we are attempting to make no such holding. The circumstantial evidence above detailed amply supports the charge of defendant's negligence.

Plaintiff, having made out a prima-facie case, was entitled to go to the jury. While it was true that the de-

fendant in defense introduced evidence tending to show that the gate was securely fastened and there was no direct proof that it was not, nevertheless, plaintiff having made a case by introducing evidence of a circumstantial nature showing that the gate was not securely closed and fastened, the whole question was one for the jury and the jury was not required to believe the testimony introduced by defendant on this point. [Holland v. Railroad, 105 Mo. App. l. c. 124.] The same may also be said in reference to defendant's testimony to the effect that deceased was seen in the aisle of the chair car, along with some other passengers intending to get off the train at Kirksville, before the train stopped for the Kirksville station.

Defendant complains of plaintiff's instructions A and B. These instructions told the jury that it was the duty of the defendant to keep the rear door of the car, as well as the vestibule doors and the gate at the rear end of the car, shut or "securely fastened." It has been often held that on vestibule trains such as the one in this case a passenger is privileged to go backward and forward through the train, and that vestibule doors are by railroads maintained, among other reasons, to keep passengers from falling off moving cars as such passengers pass to and fro. [Wagoner v. Railroad, 118 Mo. App. 240; Johnston v. Railroad, 150 Mo. App. 304; Seigel v. Railroad, 186 Mo. App. 645.]

In these instructions the court told the jury that the defendant was guilty of negligence if either the rear door of the car or the rear gate was not fastened or locked. This, we think, was error. Defendant discharged his full duty in this case if he kept either securely fastened, and, in addition, we do not understand that it is the duty of railroad companies to keep doors of vestibule cars locked. To make such a requirement might interfere with the free use of the train by passengers in going back and forth through the train, such as they have a perfect right to enjoy. It seems to us that the cause of deceased falling from the train was not a failure on the part of defendant to securely fasten the rear door of the rear car but the

failure to keep shut or securely fastened the gate on the rear end of said car. If this gate had been fastened, deceased would not have gone off of the rear of the train. If the defendant failed to keep shut and securely fastened said gate (a question for the jury to decide upon proper instructions), he was clearly negligent.

We believe it to have been error for the court to have instructed the jury as a matter of law that defendant was under the obligation to keep securely fastened the rear door of the rear car, and under these instructions, both of which contain the same error, the jury might have found for the plaintiff by reason of the fact that the rear door of the rear car was not locked, even though it found the rear gate securely fastened.

As the case must be retried it is necessary for us to pass upon the other assignments of error made by appellant. Appellant offered to prove as a part of the *res gestae* that deceased's daughter-in-law, sometime after the train left Kirksville, told the conductor that she saw the deceased get off the train at Kirksville with the other passengers. The court upon proper objection by plaintiff refused this offer.

The evidence shows that the alleged conversation did not occur until sometime after the train left Kirksville. The conductor testified that when his train left the station he got on the front end of the mail car and rode on that car to the O. K. crossing; that he then got off and went to the front end of the smoker and commenced working the train and taking up the transportation of passengers; that he went about two-thirds of the way through the car and there met the brakeman and learned that the deceased was missing; that he then went to the other car where he met Mrs. Daly, deceased's daughter-in-law, when the conversation is alleged to have taken place. From the record we are unable to tell what period of time transpired between the time that passengers alighted from the train at Kirksville and the time of the alleged conversation, though, apparently, a great deal of time had elapsed. And whether the evidence offered could properly be said to relate even remotely to the *res*

*gestæ* in this case, we feel that this evidence falls far short of the requirements as to its being connected with the event of the passengers getting off at Kirksville to become any part of the *res gestæ* of that occurrence, and was properly refused by the court. [Freeman v. Ins. Co., 195 S .W. 545; State v. McKenzie, 228 Mo. l. c. 399; Wagoner v. Railroad, 118 Mo. App. 239.]

Objections to the giving and refusing of other instructions have been carefully examined into and we find no error in the action of the court in reference thereto.

The judgment is reversed and the cause remanded. All concur.