WAGONER, Appellant, v. WABASH RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, April 24, 1906.

(Opinion by Bland, P. J.)

1. **EVIDENCE: Res Gestae: Statement of Agent.** In an action against a railroad company for injuries received by plaintiff's involuntarily stepping off a moving train while passing through an unlighted vestibule, statements made by a brakeman to another passenger that they were short of gas were inadmissible in evidence as a part of the *res gestae*.

2. **CONFLICT OF LAWS: Jumping off Moving Train.** In an action for injuries caused to plaintiff, in the State of Iowa, by involuntarily stepping off a moving train on account of the negligence of the defendant, the railroad company, in failing to have the vestibule lighted, a statute of Iowa making it negligence *per se* for one to *jump* off a moving train was irrelevant and inadmissible.

3. **CARRIERS OF PASSENGERS: Evidence: Notice to Passengers.** In an action for damages caused to plaintiff by involuntarily stepping off a moving railroad train of the defendant while passing from one car to another, a notice posted by the defendant on the cars warning passengers to remain seated while the train was in motion, was admissible in evidence.

4. ————: **Negligence in Opening Vestibule Door: Prima-Facie Case.** In an action for damages caused to plaintiff while passing from one car to another on defendant's railroad train, in stepping through an open vestibule door, where the evidence of plaintiff tended to show that the vestibule was not lighted, he made out a prima-facie case of negligence on the part of the defendant in leaving the vestibule door open, though there was evidence that passengers could have opened the door, but no evidence that they were in the habit of doing so.

5. ————: ————: **Assumption of Risk by Passenger.** Vestibules on cars serve to keep out dust and smoke and make trains

safer than they would be without them, but their presence is not an invitation to passengers to pass from one car to another, and a passenger in passing from one car to another through the vestibules assumes the risk of injury by the ordinary motion of the train.

6. ———: ——— Contributory Negligence: Instruction.   In an action for injuries caused to plaintiff while passing from one car to another on the defendant's train by stepping through an open vestibule door, it was error to instruct the jury that if the plaintiff, in passing through the vestibule in the darkness while the train was in rapid motion, stepped off the train, he was guilty of contributory negligence.

7. ———: ———: ———: ———.   It was likewise error in such case to instruct the jury that if plaintiff, through absent-mindedness, stepped off the train, he was negligent and could not recover, or if the vestibule door was opened by a passenger, he could not recover, in the absence of evidence of any such facts.

#### (Concurring Opinion by Nortoni, J.)

8. ———: ———: Degree of Care.   A railroad company is not only answerable for the negligent acts of its servants in opening vestibule doors and permitting them to remain open while the train is in motion, but is responsible for failure to exercise a high degree of care to keep the same closed, even though they are opened by others than employees.

9. ———: Vestibules: Invitation to Passengers to Pass From One Car to Another.   A railroad company is under no obligation to furnish vestibuled cars, but having furnished them, it thereby impliedly invites its passengers to pass from one car to another and owes them the duty of exercising a high degree of care to keep such vestibules in a reasonably safe condition for the purpose of such passage from one car to another.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson*, Judge.

REVERSED AND REMANDED.

*C. A. Barnes* for appellant.

(1.) It is not negligence as a matter of law to pass from one coach to another, and a passenger's motive in so doing is not material. McAffe v. Huidekoper, 9 App.

D. C. 36, 34 L. R. A. 720; Marquette v. Railroad, 33 Iowa 562; Holland v. Railroad, 105 Mo. App. 117, 79 S. W. 508. (2) The court erred in sustaining the objections to plaintiff showing the reason the lights in the coaches were dim, and in refusing to admit the testimony of the brakeman as to the reason the lights were dim, and the statements made by the brakeman concerning the lights on the trip. It would have been an admission against the defendant of an insufficient supply of gas. It was a part of the res gestae and was admissible as substantive evidence. 1 Jones on The Law of Evidence, sec. 256, page 580; Railroad v. Campbell, 43 L. R. A. 225; Railroad v. Stein, 133 Ind. 243, 19 L. R. A. 733, and note to same. (3) It was error to permit the introduction of card called "Notice to Passengers," and the rule of posting same. Talbot v. Merchants Despatch Transp. Co., 41 Iowa 247. (4) The court erred in giving defendant's instruction 1. Said instruction is inconsistent with plaintiff's instruction 6. Plaintiff's instruction 6 properly declared the law. Bronson v. Oakes, 22 C. C. A. 520, 76 Fed. 734; Railroad v. Glover (Ga.), 18 S. E. 406-414; 3 Thompson's Commentaries on the Law of Negligence (2 Ed.), sec. 2834, pp. 303-304. And it was error to give this instruction which is inconsistent, contradictory and repugnant to plaintiff's instructions 4 and 6. State v. Cable, 117 Mo. 380, 22 S. W. 953; Redpath v. Lawrence, 42 Mo. App. 101; Jones v. Talbot, 4 Mo. 279; Frank v. Railroad, 57 Mo. App. 181; State v. Herrell, 97 Mo. 105, 10 S. W. 841; Evers v. Shumaker, 57 Mo. App. 454; Schneer v. Lemp, 17 Mo. 142; Nichols v. Jones, 32 Mo. App. 657; Stone v. Hunt, 94 Mo. 475, 7 S. W. 431. (5) The court erred in giving defendant's instruction 2. This instruction says: "That what is meant by the defense of contributory negligence is that the plaintiff was guilty of some act which directly contributed to his injury." It will be observed at a glance that this definition is in effect

a peremptory instruction to find for defendant in that it does not limit acts on the part of plaintiff to negligent ones. Hicks v. Railroad, 46 Mo. App. 304; Pinnell v. Railroad, 49 Mo. App. 170; Meyers v. Railroad, 59 Mo. 223; Moore v. Railroad, 126 Mo. 265, 29 S. W. 9. "Some act" is broad enough to include any act. 25 Am. and Eng. Ency. Law (2 Ed.), pp. 1156-1157; McClellan v. McClellan, 65 Me. 506; Hunt v. State, 72 Miss. 413; 7 Century Dictionary and Encyclopedia, p. 5765. The presumption is plaintiff was exercising due care. Holding v. St. Joseph, 92 Mo. App. 143; Lawson's Law of Presumptive Evidence, p. 133, rule 19d. This instruction in addition to the foregoing definition of defense of contributory negligence, which amounts to a peremptory instruction to find for defendant, says, if by reason of the darkness plaintiff was injured, the verdict should be for defendant. It was not negligence *per se* to go from one coach to another. McAffee v. Huidekoper, 34 L. R. A. 720; Baldwin on American Railroad Law, sec. 10, p. 312. Thus it was declared as a matter of law that defendant was guilty of contributory negligence, when it should have been left to the jury to ascertain whether or not plaintiff was negligent in going through the vestibule while the same was in darkness. Weller v. Railroad, 120 Mo. 635, 23 S. W. 1061, 25 S. W. 532; Railroad v. Neiswanger, 41 Kan. 621, 21 Pac. 582; Bronson v. Oakes, 76 Fed. 734, 22 C. C. A. 520; Montgomery v. Railroad, 181 Mo. 508, 79 S. W. 930; Jamison v. Railroad, 55 Cal. 593-598. (6) The court erred in giving defendant's instruction 8, for the reason it brings into the case a question not in evidence, to-wit: "Absent-mindedness" on the part of plaintiff, an element not to be inferred from all the evidence, nor to be singled out. Beauchamp v. Higgins, 20 Mo. App. 514; Copp v. Hardy, 32 Mo. App. 588; McClure v. Ritchey, 30 Mo. App. 445; Judd v. Railroad, 23 Mo. App. 56. (7) The court erred in giving defendant's instruction 9, for the reason there

was no evidence upon which to base it, and it was not an issue raised by the pleadings. Willmott v. Railroad, 106 Mo. 535, 17 S. W. 490; Nelson Mfg. Co. v. Mitchell, 38 Mo. App. 321; Bender v. Dungan, 99 Mo. 126, 12 S. W. 795; Harding v. Wright, 119 Mo. 1, 24 S. W. 211; Price v. Railroad, 72 Mo. 414; Gardner v. Railroad, 135 Mo. 90, 36 S. W. 214.

*George S. Grover* and *George Robertson* for respondent.

(1) This accident occurred in Iowa. The law of Iowa was invoked by the defendant in its answer, and by the plaintiff in his reply. It therefore controls a recovery here. Williams v. Railroad, 106 Mo. App. 61, 79 S. W. 1167; Dunnigan v. Green, 165 Mo. 113, 65 S. W. 287. (2) Under the law of Iowa, as construed by the Supreme Court of that State, the plaintiff was not entitled to recover in this action, if the question of his negligence in walking off of a rapidly-moving train, in the nighttime, without the knowledge or consent of the conductor of the train, was submitted to the jury. Especially is this true when, after such submission, such issue of fact has been found against the plaintiff by the triers thereof to whom it was submitted. Raben v. Railroad, 74 Iowa 732; Herman v. Railroad, 79 Iowa 161. (3) The declarations, if any, made by defendant's trainmen, either before or after the accident, were inadmissible as being no part of the *res gestae*. Rogers v. McCune, 19 Mo. 558; McDermott v. Railroad, 73 Mo. 516; McDermott v. Railroad, 87 Mo. 285; Koenig v. Railroad, 173 Mo. 521, 73 S. W. 637; Purcell v. Railroad, 109 Iowa 631. (4) The instructions given at defendant's request were correct. Brownfield v. Railroad, 107 Iowa 2543; Sullivan v. Railroad, 133 Mo. 1, 34 S. W. 566.

BLAND, P. J.—In 1903 plaintiff was engaged in selling farm lands in Audrain county, Missouri, to pur-

chasers from the State of Iowa. On September 25th in said year, a few minutes after nine o'clock, p. m., plaintiff, with a party of eight or ten prospective land-buyers, procured tickets and took passage at Des Moines, Iowa, on one of defendant's excursion trains to be carried to Mexico, Missouri. There was a rush of passengers to board the train at Des Moines, and plaintiff and his party became seperated, part of them going into the second, and the others, including plaintiff, into the third car from the engine. These cars were vestibuled, and the evidence shows that when the vestibule doors are down or closed, there is no opening through which a passenger can pass from the car platform to the steps of the car, or off the car; and that the rule of the company is to keep the doors closed and only open them when the train stops at stations for the purpose of receiving and discharging passengers, and when the train pulls out from a station to immediately close the doors. The evidence also shows that the doors can be opened or closed by a passenger as well as by a trainman. After the train had left Des Moines and proceeded on its way some twelve or fourteen miles, plaintiff, for the purpose of seeing one of his party in the second car from the engine, left his seat in the third car and made his way into the second one, and after conversing with the man for a few minutes, proceeded to return to the third car. He passed out of the second car into the vestibule, where, he testified, it was dark, and felt his way along until he thought he had reached the inside of the third car and then turned, feeling his way, to pass, as he thought, through a narrow alleyway around the smoking compartment in that end of the car, back to his seat. He was mistaken as to his whereabouts. He had not passed into the third car but was yet in the vestibule when he made the turn and, the vestibule door being open, he passed around the end of the car and stepped off, or was thrown, to the ground. He received slight injuries. The suit is

to recover damages for these injuries and also for the damage to his clothing.

The answer is a general denial, a plea of contributory negligence and a special plea of a statute of Iowa, making it negligence *per se* for any one, not an employee of the company, to step or jump off a moving train.

Plaintiff introduced evidence tending to show that the cars were badly lighted and that there was no light at all on the platform from which he stepped off the car. Defendant's evidence was that the cars were well lighted and that there was a light in the vestibule. Defendant read the following rule of the company, and offered evidence tending to show that it was posted in a conspicuous place in all their passenger cars:

"The Wabash Railroad Company.—Notice to passengers.—Passengers are prohibited from standing on the platforms or within any car or caboose because of danger. They must remain seated until train has stopped at station.              "J. RAMSEY, JR., President.

"St. Louis, September 10, 1902."

Plaintiff, in rebuttal, read the following section of the Iowa Code:

"Sec. 2074. *Contract or rule limiting liability.*—No contract, receipt, rule or regulation shall exempt any railway corporation engaged in transporting persons or property from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into."

The verdict was for the defendant, and plaintiff, after taking the usual steps to preserve his exceptions, appealed in the usual way.

1. Plaintiff showed that some of the passengers complained to one of defendant's brakemen about the light, and offered to prove that the brakeman said they were short of gas. On the objection of defendant, the statement of the brakeman was excluded. This ruling is assigned as error. The declaration of the brakeman

was in no way connected with the injury or made simultaneous with its occurrence, and hence constituted no part of the *res gestae;* therefore, it was mere hearsay and inadmissible as evidence. As said by SCOTT, J., in Rogers v. McCune, 19 Mo. l. c. 569: "The admission or declaration of his agent binds the principal only when it is made during the continuance of the agency, in regard to a transaction then depending. It is admissible, because it is a verbal act and part of the *res gestae.*" Such declarations, to be admissible, must be made at the time of the occurrence to which they relate. [McDermott v. Railroad, 73 Mo. 516; McDermott v. Railroad, 87 Mo. 285; Koenig v. Railway, 173 Mo. 698, 73 S. W. 637.]

2.    The case was tried on the theory that the laws of Iowa governed, and a great deal is said in the briefs about the statute of Iowa, which, in effect, makes it negligence *per se* for a passenger to step or jump off a moving train. We are not able to see the applicability of this statute to the facts in this case. The statute can only apply where a passenger, of his own volition, steps or jumps off a moving train; it cannot apply where a passenger, as did plaintiff, involuntarily steps off, in the dark, under the impression that he is moving inside a car and not off of it. The learned trial judge took this view and very properly withdrew the statute from the consideration of the jury by an instruction.

3.    Plaintiff objected to the notice to passengers to remain in their seats as evidence, on the ground that it was an attempt on the part of the company to shift or limit its common-law liability for its own negligence. We do not think the notice had that effect or was introduced for the purpose of excusing the defendant for its own negligence. A railway company carrying passengers, discharges its primary duty to a passenger when he is safely seated in his car; if, after being so seated, he leaves his seat, while the train is in motion, and goes

from his car to another on private business with another passenger, he assumes the risk of being thrown and injured by the ordinary motion of the train and cannot recover, unless he can show that his injury was caused by the negligence of the company and that his own negligence did not contribute thereto. The notice was a warning to passengers that moving from one car to another while the train was in motion was attended with danger, and cautioned them of such danger. It was a reasonable and proper notice. It imposed no new obligation on the plaintiff and did not purport to relieve the company of any of its obligations to him as a passenger.

The defendant's evidence tends to show that the rules of the company require the doors of the vestibules to be kept closed when the train is running, and that it was the duty of the brakeman — two of whom were on the train — to see that they were closed, and that they were never opened by the trainmen except when the train stopped at a station for the purpose of discharging and receiving passengers, and as soon as this was done, the rules required the brakeman to close the doors; that the train stopped at Runnels and the vestibule between the second and third or the third and fourth cars was opened and both brakemen were on the platform; that after leaving Runnels and before plaintiff stepped off the train, the conductor went through the train and did not notice that any of the doors were open, and testified that the vestibules were well lighted. The conductor also testified that the vestibule doors could be opened or raised by passengers. The only theory upon which plaintiff can recover is that the doors of the vestibule, through which he stepped off the train, were opened and negligently left open by the defendant's servants. It was the duty of the trainmen to see that all parts of the train were kept in a reasonably safe condition for the use of passengers and, while the company did not invite its passengers to move from one car to another, but on the

contrary had a rule posted in its cars warning passengers not to do so, yet in view of the well-known custom and habit of passengers to go from one car to another for various purposes, it was the duty of the defendant to keep its passageway (its vestibules) between the cars in a condition reasonably safe for passengers to walk through.    To be in a reasonably safe condition, these vestibules should be lighted and the doors closed.    The evidence for plaintiff tends to show that the vestibule from which he stepped was not lighted and that the door had been left open through the negligence of someone, but the evidence does not show who was the negilgent one.    While the evidence shows that the vestibule door could have been opened by a passenger, there is no evidence that they were in the habit of opening them or that one was ever opened by a passenger.    It was the duty of the brakeman to keep these doors closed while the train was in motion, and we think from the facts that the door was opened at Runnels, where the train stopped, and was opened when the plaintiff stepped off, the reasonable inference to be drawn is, that it was negligently left open by the brakeman (Jones v. Railroad, 178 Mo. 528, 77 S. W. 890; Redmon v. Railroad, 185 Mo. 1, 84 S. W. 26; Raney v. Lachance, 96 Mo. App. 479, 70 S. W. 376), and there being some evidence that the plaintiff received some injuries, though very slight, we think he made out a prima-facie case, and the judgment should not be affirmed on the ground that plaintiff was not hurt.

4.    Plaintiff's sixth instruction is as follows:

"The court instructs the jury that defendant was under no obligation to provide vestibuled trains for its passengers, but having done so it was its duty to maintain them in a reasonably safe condition.    The presence of such an appliance on the train is a proclamation by the defendant that it has provided passengers a safe means of passing from one coach to another and an invitation for them to use it as their convenience or neces-

sity may require. If you find from the evidence that the
train upon which plaintiff was a passenger was made up
of vestibuled coaches, and that the vestibule between
two of said coaches was unlighted, the flooring or trap
covering the steps up and open, and the outside doors
open, and the steps unguarded; that under such circum-
stances said vestibule was not reasonably safe for passen-
gers exercising ordinary care to pass through; then said
defendant was negligent, and if you find from the evi-
dence that plaintiff while passing through such a vesti-
bule in the exercise of ordinary care was thrown off, fell
or walked from said train by reason of said negligence
of defendant, your verdict will be for plaintiff."

This instruction is erroneous in that it told the jury,
by providing a vestibuled train, defendant invited its
passengers to go from one car to another. Vestibules
serve to keep dust and smoke out of the cars,
and a train with vestibules is safer than one
without them; they also make the passage from
one car to another, safer than it would be with-
out them. But their presence is not an invitation
to passengers to pass from one car to another, and a
passenger going from one car to another on a moving
train, when not invited by the company to do so, assumes
the risk ordinarily incident to such conduct. In other
respects we see no objection to the instruction, and we
do not think defendant's first instruction inconsistent
with it, if the objectionable parts of plaintiff's are strick-
en out.

Defendant's second instruction reads as follows:

"The court instructs the jury that while it is true
that the defense of contributory negligence must be
pleaded and established by defendant, this does not mean
that the evidence of such contributory negligence may
not be furnished by the plaintiff himself or his witnesses;
that what is meant by the defense of contributory negli-
gence is that the plaintiff was guilty of some act which

directly contributed to his injury. Although you may find from the evidence in this case that a trap door in the vestibule was left up, yet if you find that it was dark in the vestibule at the time plaintiff attempted to pass through it and he knew that fact or could have known that fact at the time by the use of ordinary care on his part and that the plaintiff attempted to go through said dark place from one car to another, when the train was in a rapid motion and if by reason of the darkness, plaintiff stepped off the train, then plaintiff was guilty of such negligence on his part as to preclude a recovery and you will find for the defendant."

The act of the defendant in stepping off the train unquestionably contributed to his injury. Under this instruction, the jury might have found him guilty of contributory negligence, however prudent and cautious he may have been in passing from one car to another, and the instruction is clearly erroneous.

Defendant's eighth and ninth instructions are as follows:

"8. The court instructs the jury that if the said vestibule through which plaintiff attempted to pass was lighted up in the usual and ordinary way as practiced by defendant and that plaintiff through absent-mindedness or by carelessly and negligently failing to observe his surroundings, walked off the car platform instead of into the car, then he cannot recover."

"9. If you further believe or find from the evidence that the said trap door was removed by some passenger and not by defendant nor negligently left open or insecure by the defendant, then defendant is not liable."

There was no evidence in the record upon which to predicate either of these instructions and they should have been refused. For the same reason plaintiff's eighth instruction should not have been given. We see no sub-

stantial objection to other instructions given for either party.

For the errors above noted the judgment is reversed and the cause remanded. *Goode* and *Nortoni, JJ.*, concur in result.

NORTONI, J. (concurring).—1. It is said in the opinion by the Presiding Judge that: "The only theory upon which the plaintiff could recover is that the doors of the vestibule through which he stepped off the train were opened and left open by the defendant's servants." The majority of the court are unable to concur in this doctrine which would relieve the railroad company from its duty to exercise that degree of care which is due from carrier to passenger to the end of providing a reasonably safe conveyance, etc. It is the opinion of the court that the railroad company is not only answerable for the negligent acts of its servants in opening the vestibule doors and permitting the same to so remain after having been opened by them, but it is responsible as well for its failure to exercise a high degree of care to the end that the same are closed and the vestibule reasonably safe for use, even though they are opened by others than the defendant's servants.

2. We are likewise unable to concur in the views expressed in the criticism of plaintiff's sixth instruction. Were the question of first impression, and it is not, we would certainly incline to the view and hold that while the railroad company is under no obligation to furnish the extraordinary comfort and convenience of vestibuled cars, yet having furnished such convenient, alluring and inviting appliances as parcel of its train, it thereby impliedly invites its patrons to pass to and fro in such portions of the train as they are entitled to occupy in accordance with the class or grade of transportation held by them, and that a duty arises thereform on the part of the railroad company to exercise the same degree of

care owing from carrier to passenger to maintain and furnish them reasonably safe for the purpose. [Augusta Ry. Co. v. Glover (Ga.), 18 S. E. 416-414.] Indeed, while it is true that such vestibules serve to prevent the dust and smoke from entering the cars to a large extent, as mentioned in the opinion by the Presiding Judge, and thereby contribute to the comfort of the passengers, their principal purpose is, beyond doubt, to render it convenient and safe for passengers to pass to and fro, and the railroad company having thus furnished such convenience and comfort, its act in so doing operates in law as an invitation to passengers to pass from one car to another as convenience or necessity requires; and from this undertaking on its part, a duty is thereby imposed upon the railroad company to exercise high care to maintain them reasonably safe so that the passenger may occupy the same for the purpose intended with a reasonable degree of safety to himself by the exercise of ordinary care on his part. Our views on the subject have been so well and forcibly stated by one of the very soundest courts of the country (the United States Circuit Court of Appeals, Eighth Circuit), in the case of Bronson v. Oaks, 76 Fed. 734-740 (s. c., 22 C. C. A. 520-525), that we quote therefrom as follows:

"The defendants are under no legal obligation to provide vestibuled trains for their passengers, but, having done so, it was their duty to maintain them in a reasonably safe condition. [Railway Co. v. Glover (Ga.), 18 S. E. 406-414.] The purpose of the vestibuled cars is to add to the comfort, convenience and safety of passengers, more particularly while passing from one car to another. The presence of such an appliance on a train is a proclamation by the company to the passenger that it has provided him a safe means of passing from one car to another, and an invitation for him to use it as his convenience or necessity may require. Whether, having provided vestibuled cars for their passenger trains, it

was negligence in the defendants to leave the vestibule connection between two cars without light, and the outside door of the vestibule open without a guard rail or other protection while the train was running rapidly on a dark night, is a question of fact for the jury to determine. And if, upon the facts set out in the complaint, they should find that it was negligence, no court could disturb their finding." [See also 3 Thompson on Negligence, sec. 2834.]

By reference thereto, it will be observed that plaintiff's sixth instruction was no doubt copied in part from the language of the opinion in the case quoted. It is sound law, as we understand it, and is approved.

In 2 Shearman & Redfield on Negligence (5 Ed.), sec. 524, a very clear and comprehensive discussion of the law on the subject is had, and in part, it is said:

"The modern vestibule train, by its very construction, invites passengers to cross platforms while the train is in motion; and no presumption of negligence arises from so doing. Passengers have a right to presume that all passenger cars are equally safe; and they ought not to be restricted to any one. Nor can they be required to sit still. The law, which makes liberal allowance for the natural restlessness of dogs, must surely make equal allowance for the restlessness of the average man. Long train journeys are monotonous and trying, at their best; and active men find it impossible to sit still all the way. No special reason for moving need be assigned. The only question is, whether, under all the circumstances, the act was one natural to a prudent man, exercising his prudence."

With these observations on the law of the case, the judgment is reversed and the cause remanded. *Judge Goode* concurs with me in the view expressed herein.